The order below is hereby signed.

Signed: January 28 2025

Elizabeth L. Gunn
U.S. Bankruptcy Judge



# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

| In re: | Case No. 24-00065-ELG |
|---|---|
| **Raocore Technology, LLC,** Debtor. | Chapter 7 |

## MEMORANDUM OPINION AND
## SUPPLEMENTAL ORDER ON APPLICATION TO EMPLOY

At the hearing on the *Amended Application to Employ John D. Burns and The Burns Law Firm, LLC as Counsel for Debtor* (the "Amended Application") held May 22, 2024 (the "May 22 Hearing"), the Court found that John D. Burns and the Burns Law Firm, LLC (together, the "Applicants") represent or hold no interest adverse to Raocore Technology, LLC (the "Debtor"), are disinterested, and therefore meet the requirements for employment as counsel to the Debtor under § 327(a).[1] The Court took under advisement the portion of the Amended Application seeking approval under § 328 of the terms and conditions of such employment as set out in the retention agreement between the Debtor and the Applicants (the "Retention Agreement"). At issue are several provisions of the Retention Agreement that provide for the duty of the Debtor, as a demand

---

[1] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

right of the Applicants, to make post-petition retainer replenishment payments to the Applicants in the "sole judgement of the firm"—*de facto* evergreen retainer provisions.[2]

Notwithstanding the pendency of the Amended Application (and prior to the filing of the Amended Application, the original application[3] to employ the Applicants (the "Original Application")), and without approval of their employment or the Evergreen Provisions of the Retention Agreement, the Applicants received over $100,000 in post-petition retainer deposits from the Debtor. The question of the permissibility of evergreen retainers, and the requirements for approval thereof, is an issue of first impression in this jurisdiction. For the reasons stated herein, the Court finds evergreen retainers are permitted in this district and articulates the standard for their approval. In applying that standard, the Court finds the Evergreen Provisions in the Retainer Agreement are impermissible, and any amounts paid to the Applicants under the Evergreen Provisions should be disgorged to the chapter 7 trustee of the Debtor's estate.

---

[2] For a fulsome discussion of what constitutes an evergreen retainer, *see infra* p. 8. The evergreen retainer portions of the Retention Agreement are hereinafter referred to as the "Evergreen Provisions." The Evergreen Provisions appear throughout the Retention Agreement. For the avoidance of doubt, the specific provisions which comprise the Evergreen Provisions are:

> The Firm reserves the right to request an additional retainer in an amount determined by the Firm should such be necessary or appropriate in the sole judgment of the Firm at any time should circumstances change in the Firm's understanding of the work to be undertaken from the present time, or should the initial or any subsequent retainer be exhausted in a particular billing period(s) . . .
>
> . . .
>
> The Firm reserves the right to request an additional retainer in an amount determined by the Firm should such be necessary or appropriate in the sole judgment of the Firm at any time as noted above. A payment of $15,000.00 has been received from the Client paid by third party gift funds from Raymon Andre Odom individually. To the extent the retainer level on an accrual basis reaches $7,500.00, the Firm shall request that the Client replenish same or supply a further retainer as may be appropriate or necessary in [*sic*] sole judgment of the Firm. Retainer payments must be made from third party funds by gift or from Client's property unless there is a cash collateral order in place barring payment directly from Client as to the latter source being Client's property.

Retention Agreement at 1, ECF No. 280-3.

[3] Application to Employ Counsel for the Debtor, ECF No. 85.

I. **Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.

II. **Background**

On the morning of December 20, 2023, the Debtor filed a voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "EDVA").[4] On December 26, 2023, White Oak Commercial Finance, LLC ("White Oak") filed a motion to transfer venue of the case from the EDVA to this Court.[5] The Applicants filed their Original Application on January 13, 2024, however, the EDVA court did not rule upon the Original Application prior to the transfer of the case to this Court on March 1, 2024.[6] The Original Application discloses the terms of the Applicants' engagement, the "donative" original "retainer" of $15,000 provided by Raymond Odom (the Debtor's principal), and that the Applicants' "retainer provides for periodic retainers and these shall be disclosed as required."[7]

The Original Application goes on to state that the Applicants "agreed to an hourly retainer and monthly or periodic bills are presented and retainers will be provided to the [Applicants] less agreed discounts[,] which are being held in escrow and are disclosed pursuant to Fed. R. Bankr. P. 2016(b)."[8] The Original Application, however, conversely also states that the Applicants and

---

[4] Voluntary Petition for Non-Individuals Filing for Bankruptcy, ECF No. 4.
[5] Motion to Transfer Venue of Bankruptcy Case, ECF No. 39.
[6] Order Granting Motion for Change of Venue, ECF No. 193.
[7] Original Application at ¶ 9.
[8] *Id*. at ¶ 18.

3

Debtor "understand that no post-petition fees may be paid to [the Applicants] from property of the estate without prior approval and/or Order of the Bankruptcy Court."[9] Ultimately, the Original Application requests a "grant" of the application and approval of the Applicants to represent the Debtor in the case effective as of December 22, 2023.[10] No mention or specific request is made as to approval under § 328 or the Evergreen Provisions, except in the context of a "grant" of the application *in toto*. The Retention Agreement was not attached to the Original Application.

Prior to the transfer of venue, White Oak filed a limited objection to the Original Application on issues not directly related to the Evergreen Provisions.[11] The Applicants/Debtor filed a reply[12] to the limited objection on February 6, 2024, and a hearing was set for March 12, 2024. However, the case was transferred to this Court prior to the hearing being held in the EDVA.

After the transfer of venue, this Court issued a scheduling order on matters that remained pending as of March 1, 2024, including the Original Application.[13] Prior to the scheduled hearing, White Oak filed a supplemental objection, for the first time raising the issue of the Evergreen Provisions of the Retention Agreement (obtained by White Oak through discovery and not due to disclosure on the docket by the Debtor) and post-petition deposits made by the Debtor to the Applicants (the "Supplemental Objection").[14] In addition to the terms of the retention, the Supplemental Objection raised questions of post-petition deposits made by the Debtor in the amount of over $96,000 to the Applicants prior to approval of the Applicants' employment or a fee application.[15]

---

[9] *Id.* at ¶ 20.
[10] *Id.* at p. 6.
[11] Limited Objection to Application to Employ Counsel to the Debtor, ECF No. 112.
[12] Reply on Application to Employ Counsel for the Debtor and Notice of a Hearing on March 12, 2024 at 11:00 am, ECF No. 144.
[13] *See* Amended Scheduling Order, ECF No. 211.
[14] Supplemental Objection to Application to Employ Counsel to the Debtor, ECF No. 216, hereinafter referred to as the "Supplemental Objection.".
[15] *Id.* at ¶ 15.

4

On April 16, 2024, the Court held a hearing (the "April 16 Hearing") on the Original Application and the oppositions filed thereto. At the April 16 Hearing, the Court expressed concern with the scope and content of the notice of the Original Application, as it had only vaguely described the Evergreen Provisions in the Original Application as "periodic retainers." In response to the Court's inquiry, the Applicants requested the opportunity to supplement the Original Application on the issue of the Evergreen Provisions, which the Court permitted, and continued the hearing to May 22, 2024.

The Applicants filed their Amended Application on April 30, 2024 and attached both (i) the Retention Agreement dated January 24, 2024 and (ii) all of the Applicants' previously filed Disclosure of Compensation forms. The Applicants served a notice of opportunity to object to the Amended Application on a limited service list (not on all parties in interest), without any specification in the notice as to the request for approval of an evergreen retainer.[16] In response to the pending objections and the Court's inquiry, in the Amended Application, the Applicants argued that the Retention Agreement "provides for periodic retainers and these shall be disclosed as required" and that "it relayed that no fees may be paid to the Firm without prior approval and/or an Order of the Bankruptcy Court and fee applications are required whether the case is dismissed or otherwise finalized."[17] The Amended Application further clarified that the Applicants sought a determination of eligibility for employment under § 327 and approval under § 328 of the terms and conditions of their employment including the Evergreen Provisions.[18] The Applicants highlighted that the Retention Agreement allows them to "retain the rights as it does in all representation in all cases to request a supplemental retainer on different terms to the extent there

---

[16] Amended Application at pp. 17–18.
[17] *Id.* at ¶ 11.
[18] *Id.* at p. 15–16.

5

is[,] in the sole judgment of the [Applicants,] a change in circumstances requiring a larger or different form of retainer" from the Debtor.[19] No reference is made in the Retention Agreement about Court approval of the terms of Retention Agreement or the Evergreen Provisions therein.

In its objection to the Amended Application, White Oak clarified that it did not object to the Debtor's retention of the Applicants under § 327, but restated its objection to the proposed terms of employment under § 328 (the "Second White Oak Objection").[20] The Second White Oak Objection argues that notwithstanding the Court's questions and concerns raised at the April 16 Hearing, the Amended Application continued to inappropriately and inadequately disclose the existence of and seek specific approval of the Evergreen Provisions. The subchapter V trustee and the chapter 11 trustee for the estate of JJB D.C., Inc. (the "JJB Trustee") joined in the Second White Oak Objection.[21]

At the May 22 Hearing, the Court heard argument from the Applicants, White Oak, the Office of the United States Trustee (the "UST"), counsel for the subchapter V trustee, and counsel for the JJB Trustee regarding the Amended Application. At the conclusion of the May 22 Hearing, the Court approved the Amended Application as to Applicants' disinterestedness under § 327(a) and took under advisement the approval of the terms of the retention under § 328(a), including the Evergreen Provisions.[22]

---

[19] *Id*. at ¶ 19.
[20] Objection to Amended Application to Employ Counsel to the Debtor, ECF No. 289.
[21] Subchapter V Trustee's Limited Joinder in White Oak Commercial Finance, LLC's Limited Objection to Amended Application to Employ Counsel to the Debtor, ECF No. 292; Chapter 11 Trustee's (I) Limited Joinder in White Oak Commercial Finance, LLC's Objection to the Amended Application to Employ Counsel to the Debtor, and (II) Joinder in the Subchapter V Trustee's Limited Joinder in White Oak Commercial Finance, LLC's Objection to Amended Application to Employ Counsel to the Debtor, ECF No. 294.
[22] Despite the Court's ruling as to disinterestedness, no order was ever entered approving the employment under § 327. Notwithstanding this omission, prior to entry of this Memorandum Opinion and Order, the Applicants filed an application for approval of compensation relying upon the Court's oral ruling. For clarity, the Court addresses the employment under § 327 in the order provisions of this Memorandum Opinion and Order.

6

### III.    Discussion

*A. Standard for Approving Evergreen Retainers*

"It is the obligation of the Bankruptcy Court to approve the terms of employment of professionals, in accordance with the terms of the Bankruptcy Code, regardless of the terms articulated in the employment contract." *In re Boomerang Tube, Inc.*, 548 B.R. 69, 75 (Bankr. D. Del. 2016). Professionals seeking employment under § 327(a) must "state specific facts showing . . . any proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a)(2)(E); *see also* Local Bankruptcy Rule (LBR) 2014-1(b). As part of the consideration of an application to employ a professional, a bankruptcy court must examine the reasonableness of proposed fee arrangements. *See Official Comm. of Unsecured Creditors v. Harris (In re Sw. Food Distribs., LLC)*, 561 F.3d 1106, 1112–13 (10th Cir. 2009). The question of approval of employment is a two-part inquiry. First, the Court must consider whether the applicant is disinterested as required by § 327, and second, if disinterested, whether the terms of employment requested for approval are reasonable under § 328. *See Movitz. v. Baker (In re Triple Star Welding, Inc.)*, 324 B.R. 778, 789–90 (B.A.P. 9th 2005). No party challenged the disinterestedness of the Applicants, and the Court ruled on that issue at the May 22 Hearing. Thus, the only remaining issue is whether, under the facts and circumstances of this case, the requested terms of employment by the Applicants (including the Evergreen Provisions) should be approved in full or in part.

Pursuant to § 328(a), a debtor, with court approval, "may employ" a professional under § 327(a) "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, the Bankruptcy Code provides courts with broad discretion in determining the reasonability of employment under the particular circumstances of each case. *See In re Harold & Williams Dev.*

7

*Co.*, 977 F.2d 906, 909 (4th Cir. 1992); *see also In re Danner*, AP No. 11-1315-JHuMk, 2012 WL 3205242, at *4 (B.A.P. 9th July 31, 2012) ("The operative words [of § 328(a)] are 'may' and 'reasonable.'"). An engagement agreement is a contract "subject to objection by other parties and is ultimately subject to approval (and modification) by the Court." *Boomerang Tube*, 548 B.R. at 74. There is no challenge to the majority of the terms of the Applicants' Retention Agreement including, but not limited to, the proposed staffing, hourly rates, and condition of payment of fees on approval by this Court under § 330. Nor do the Applicants request that this Court make a specific pre-determination of the "reasonableness" of their proposed hourly rates under § 328(a) to limit the Court's analysis of the same upon the filing of a fee application. *Cf. In re MP PPH LLC*, Case No. 23-00246-ELG, 2024 WL 1023113 (Bankr. D.D.C. Mar. 8, 2024) (denying the request to pre-approve under § 328(a) the hourly fees of counsel to the official committee of unsecured creditors). Instead, the issue before the Court is the Applicants' request for approval of the Evergreen Provisions of the Retention Agreement, referred to interchangeably by the Applicants as a "supplemental" or "evergreen" retainer.[23] The question of appropriateness of such evergreen retainers in bankruptcy cases and the standard for approval thereof is an issue of first impression in this district.

A general retainer is a fee that secures a lawyer's ability to perform legal services during a specified period and is not related to time expended by the attorney. *See Law Offices of Arman Dabiri & Assoc. P.L.L.C. v. Agric. Bank of Sudan*, Civ. No. 17-2497 (RDM), 2021 U.S. Dist. LEXIS 44232, at *3–4 (D.D.C. March 9, 2021) (quoting D.C. Bar Ass'n Comm. on Legal Ethics, Op. 264 (1996)); *see also In re Insilco Techs., Inc.*, 291 B.R. 628, 632 (Bankr. D. Del. 2003). In a chapter 11 case, an evergreen retainer agreement contemplates that a debtor's professional's

---

[23] Amended Application at ¶ 23.

interim compensation shall be paid from the debtor's operating capital, holding the original retainer for application towards a final fee application. *See Insilco*, 291 B.R. at 632; *see In re Pan Am. Hosp. Corp.*, 312 B.R. 706, 709 (Bankr. S.D. Fla. 2004).

The primary purpose of an evergreen retainer in the chapter 11 context is to minimize a professional's risk of non-payment if the debtor's financial position deteriorates or an estate becomes administratively insolvent. *See Insilco*, 291 B.R. at 632. The concern arises, however, that requiring the payment of post-petition deposits to a professional necessarily reduces the funds available from a debtor's estate to pay ongoing operating expenses and making the debtor's reorganization more difficult. *See id.*; *see Pan Am.*, 312 B.R. at 709, 712–13. In the case of an administratively insolvent estate, the existence of an evergreen retainer may result in one administrative creditor receiving a significantly higher payment of its claims than other administrative creditors (*i.e.*, trade or service creditors). The approval of an evergreen retainer agreement is essentially a court order authorizing the preferential treatment of one administrative creditor differently from other administrative creditors and, therefore, is not appropriate in every case. *See, e.g., Insilco*, 291 B.R. at 632–33.

Notwithstanding this potential outcome, this Court agrees that reasonable evergreen retainers are permissible in certain chapter 11 cases with: (i) appropriate notice; (ii) specific disclosure of the existence of an evergreen retainer in any employment application filed with the Court; (iii) the inclusion of any retention agreement with any employment application; (iv) terms in the applicable retention agreement making clear that any amounts paid shall be held in trust until a final fee application is approved (or other time period as agreed by the parties and approved by the Court); and (v) ultimate approval of any employment application by the Court prior to any payments made by any entity thereunder. In addition to the foregoing notice and disclosure

9

requirements, before approving an evergreen retainer provision, the Court must consider the reasonableness of the employment application and underlying evergreen retainer, especially whether they are tailored to both the requirements of the Bankruptcy Code and the particular circumstances of the individual chapter 11 proceeding. *See Insilco*, 291 B.R. at 634.

Although no one factor is determinative, factors to be considered in determining whether the terms of a proposed retention are reasonable include (i) the relationship between the Debtor and the applicant, including whether the parties have equal bargaining power engaging in an arms-length negotiation; (ii) whether the proposed terms of retention are in the best interests of the estate; (iii) whether there is creditor opposition to the retention or retainer provisions; and (iv) whether given the size and circumstances of the case, the amount and terms of the retainer are reasonable, including whether the terms provide an appropriate level of risk minimization taking into consideration any other risk minimization factors such as an administrative order or carve-outs.[24] *See id.*; *see also In re Knudsen,* 84 B.R. 668, 672–73 (B.A.P. 9th Cir. 1988) (holding that an applicant seeking approval of an evergreen retainer agreement bears the burden of establishing that the case is one in which such agreement is necessary, such as a case where exceptionally large fees will accrue each month or that waiting an extended period of time for payment would place an undue hardship on counsel). Additionally, if an applicant seeks approval of an evergreen retainer, the terms of the evergreen retainer must be clearly disclosed in the applicable employment application and the retention agreement outlining the terms and conditions of the evergreen retainer must be attached to the application. *See Insilco*, 291 B.R. at 636. With this standard enumerated,

---

[24] When first examined in depth by bankruptcy courts, evergreen retainers were a recent phenomenon. However, the national bankruptcy landscape has evolved to the point where evergreen retainers are common practice in chapter 11 cases. Thus, it is no longer necessary to consider the prevalence of such provisions in the marketplace as a factor for approval. The Court does not doubt that in the future new, novel forms of retention terms will be created by creative attorneys, and in those cases it may be appropriate again to consider the prevalence of such terms in the market as part of an analysis of approval thereof by a bankruptcy court. But that time has passed for evergreen retainers in complex bankruptcy cases.

10

the Court next applies the standard to the Applicants' Original Application, Amended Application, and the record herein.

### B. The Evergreen Provisions Cannot be Approved under § 328

#### i. Notice and Disclosure

As raised by the Court at the April 16 Hearing, the Original Application did not provide disclosures sufficient to warrant approval of the Evergreen Provisions. The Amended Application sought to remedy those deficiencies, including the submission of the Retention Agreement as an exhibit thereto. In the Original Application, the Applicants disclosed only that their Retention Agreement required "periodic retainers," without further description. The Amended Application quotes the Retention Agreement and provides a further, somewhat convoluted description of how the "evergreen" portion of the retainer is a "net-retainer sum balance on hand" to replenish funds to at least the original $15,000 retainer amount.[25] The Applicants explain that they reserve the right to request, in their "sole judgment," a supplemental retainer on different terms than the original "retainer" to the extent a change in circumstances requires a larger or different retainer.[26]

In essence, even as described in the Amended Application, there is very little clarity on what retainer terms the Court is being asked to approve. The Applicants argue that their agreement to (i) file supplemental fee disclosures upon receipt of additional retainers and (ii) hold such amounts in trust pending fee application approval is sufficient to allow for disclosure and Court oversight of overpayments.[27] Such open-ended, unilateral authority by counsel with a potential retroactive review by the Court is anything but sufficient disclosure to allow parties or the Court

---

[25] Amended Application at ¶ 23. The Amended Application incorrectly provides that the retainer must be replenished when it reaches $7,500.00. The Court believes that this was a scrivener's error, and that the Applicants meant $15,000.00.
[26] *Id*.
[27] This problem is highlighted by the post-petition actions taken by the Applicants in this case, as they received $100,163.46 of post-petition retainers without court approval, including receipt of deposits after an objection was pending to the evergreen nature of the retention.

11

to determine if the agreement is reasonable. Furthermore, the request to approve language providing for the Applicants' unilateral right to require a "larger or different retainer" is nothing more than a request for the Court to approve a blank check for the Applicants to modify in their sole judgment with no prior disclosure or court approval whatsoever. As more fully articulated herein, the Court finds that the Applicants have not met their burden of appropriate notice and disclosure as to the Evergreen Provisions.

    ii.  *Relationship between Applicants and Debtor*

In support of the approval of the terms of retention, the Applicants argue that they and the Debtor's former principal, Raymond Odom, are savvy business professionals who, unlike consumer debtors, understand contractual machinations and bargaining power.[28] However, despite these general statements, the Applicants do not expand upon any details of the "machinations" or "bargaining" in this case. Nor do the Applicants explain the process or details of obtaining a "donative" retainer from Mr. Odom, when the record is clear in the case that once certain payments were made by the Debtor to the Applicants that Mr. Odom requested the "donated" retainer to be returned.[29] The record itself calls into question how robust the negotiations might have been—the petition in this case was a hand-written form filed *pro se*, a retention agreement was not executed until two days post-petition, and an application for counsel to appear *pro hac vice* in the EDVA was not filed until six days post-petition.[30]

---

[28] Amended Application at ¶ 29(ii).
[29] Supplemental Objection at ¶ 16.
[30] Although not raised by the parties specifically in opposition to Amended Application, the Debtor was also required to initially seek to retain the services of a second law firm (Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury")) while the case pended in the EDVA as the Applicants are not admitted to practice in the EDVA, thus creating the need for local counsel. Although local counsel began representing the Debtor in the EDVA as of the same date as the Applicants, an employment application for Pillsbury was not filed until February 28, 2024 in the EDVA. ECF No. 188. When the case was transferred to this Court, the application was withdrawn. No application for approval of compensation for the period of time between the case being filed in EDVA and transferred to this Court has been filed by Pillsbury.

The only version of the Retention Agreement provided by the Applicants was an "Amended Retainer Agreement" dated January 24, 2024, which the Applicants allege was modified to fix undefined "typographical errors" at the request of the UST and that the Debtor "re-signed anew."[31] It is unclear to the Court whether the Debtor was informed as to the request, the errors, or provided with any opportunity to bargain as to the terms of the amendments or any other prior modification. Further, given that the "donated" retainer did not appear to be a completely voluntary gift, it is unclear what ability Mr. Odom and/or the Debtor had to negotiate the amount or terms of any retainer provisions.

Thus, at best, the Debtor retained the Applicants during a period of distress—immediately post-petition, facing both an emergency motion for adequate protection[32] filed on the same date as the petition and potential dismissal for the *pro se* filing—resulting in a partial imbalance of bargaining power in terms of the Applicants' retention. At worst, it represents a situation where a vulnerable debtor was told "take it or leave it" and ownership was required to "donate" an initial retainer for the proposed representation. The record is insufficient for the Court to make that finding. However, the record *is* sufficient to find that in either situation, the negotiation was clearly not arms-length between the Debtor and the Applicants and weighs against approval thereof.

### iii. *Best Interests of the Estate*

The Applicants' argument as to the best interests of the estate focuses on the retention of counsel generally for a chapter 11 case, not the best interests of this Debtor's estate on the retention of the Applicants on the terms and conditions set forth in the Retention Agreement. Unlike most reported cases considering evergreen retainers, the Applicants did not have a pre-existing pre-petition relationship with the Debtor that would benefit the estate through a pre-existing knowledge

---

[31] Amended Application at ¶¶ 9–10.
[32] *See* Motion for Adequate Protection and Objection to Use of Cash Collateral, ECF No. 10.

13

base, pre-bankruptcy planning and analysis, or any other advantage. The facts evidence a completely opposite situation in this case—the Applicants were retained post-petition without any pre-existing knowledge or other insight into the Debtor's operations or the case. The Applicants argue that notwithstanding their post-petition engagement, their retention benefits the estate because but-for their engagement the case would have been dismissed under the EDVA Local Rules.[33] Without question, the engagement of the Applicants allowed the case to proceed. But the requirement that a corporate entity have counsel (a requirement of any corporate chapter 11 debtor in either the EDVA or this Court) does not support the need for approval of an evergreen retainer.[34]

Furthermore, at all times through the filing of the Amended Application, the Debtor operated on a (perhaps generously described) "shoestring budget" while engaging in significant litigation.[35] If approved, the Court would be approving and ordering the Debtor to pay to the Applicants each month the total amount of fees incurred—amounts significant enough to cause the Debtor to choose between paying operating expenses or paying counsel.[36] If the Evergreen Provisions are approved, failure to make the post-petition payments to the Applicants would not only be a breach of the Retention Agreement, but also constitute a violation of a Court order sufficient to serve as cause to convert or dismiss this case under § 1112(b)(4)(E). While the

---

[33] *See* Notice of Deficient Filing, ECF No. 18; *see* United States Bankruptcy Court for the Eastern District of Virginia Local Bankruptcy Rule 1074-1, hereinafter referred to as "EDVA LBR."
[34] *See* LBR 9010-1; *see* EDVA LBR 1074-1.
[35] *See* Monthly Operating Report for December 20, 2023 – December 31, 2023, ECF No. 124; *see* Monthly Operating Report for January 2024, ECF No. 180; *see* Amended Monthly Operating Report for January 2024, ECF No. 196; *see* Monthly Operating Report for February 2024, ECF No. 221; *see* Monthly Operating Report for March 2024, ECF No. 279; *see* Monthly Operating Report for April 2024, ECF No. 298. According to the final monthly operating report filed in this case, and before the Amended Application was filed on April 30, 2024, the Debtor paid $129,381.95 to professionals in this case. According to the First Interim Application for Compensation for Counsel for the Chapter 11 Debtor and for Reimbursement of Expenses (December 22, 2023 – April 16, 2024), Mr. Burns has received a total of $115,163.46 in retainer payments inclusive of the "donated" $15,000 "retainer" from Mr. Odom. *See* ECF No. 313. This leaves a total of $14,218.49 unaccounted for, but it does not appear that such amounts were paid to the Applicants.
[36] Due to the unauthorized post-petition deposits to the Applicants, it appears that the Debtor had to do this very thing—choose between depositing money with the Applicants or making payments on operating expenses such as equipment rentals. *See, e.g.*, Monthly Operating Report for March 2024, ECF No. 279 (listing extensive post-petition unpaid invoices).

14

willingness of the Applicants to represent a corporation engaged in significant pre-petition litigation and facing significant post-petition litigation did provide the benefit of allowing the Debtor to remain in bankruptcy, there was nothing unique brought to the case by the Applicants different than any other bankruptcy firm accepting a post-petition engagement that would support approval of the Evergreen Provisions as in the best interests of the estate. Thus, this factor weighs against approving the Evergreen Provisions.

          *iv.*      *Creditor Opposition*

As noted at the May 22 Hearing, there is no opposition to the retention of the Applicants as disinterested under § 327. The opposition was to approval under § 328 of the Evergreen Provisions in the Retention Agreement raised by White Oak, the JJB Trustee, and the subchapter V trustee. The objections have been consistent throughout the pendency of the Original Application and Amended Application, and clearly weigh against approval of the Evergreen Provisions.

          *v.*      *Reasonableness of Retainer Terms and Alternative Risk Minimization*

It is uncontested that this case does not have any other risk minimization factors such as an administrative order[37] or a cash collateral order containing a carve-out for professional fees. In addition (as mentioned above), this case has been rife with significant litigation since before the petition date.[38] Unlike cases where pre-petition counsel continues to represent the debtor post-petition, the Applicants knowingly chose to represent the Debtor in this case after the petition date, in the context of both the existing litigation and the lack of any agreement for any type of

---

[37] Administrative orders include, but are not limited to, those orders which provide authority or procedures for the expenditure of estate resources on professional fees.

[38] This case was filed mere minutes prior to a temporary restraining order hearing against the debtor in an adversary proceeding in the case of JJB D.C., LLC. *See* Motion for Temporary Restraining Order, Adv. Pro. 23-10034, ECF No. 3; *see* Notice of Hearing on Motion for Temporary Restraining Order, Adv. Pro. 23-10034, ECF No. 6.

15

administrative order or cash collateral order. Given the lack of other risk minimization factors in the case, it is reasonable for counsel to try and obtain some risk protection. Thus, it becomes a question of the reasonableness of the Evergreen Provisions. Otherwise, the appropriateness of the fees incurred due to litigation and the reasonableness of the time spent are questions to be addressed through the fee application process.[39]

In general, a $15,000 retainer in a subchapter V case is not an unreasonable amount. As designed, subchapter V is intended to be a streamlined process for qualifying debtors resulting in lower costs to facilitate a more efficient reorganization.[40] Given this background, it will be the truly rare subchapter V case that will be of a size and exceptional nature to warrant an evergreen retainer.[41] Notwithstanding the extensive litigation in this particular subchapter V case, the case itself is neither of a size nor complexity on its face to, without more, support the necessity of an evergreen retainer. The Applicants' implied argument that they "always" seek an evergreen retainer from debtors, without any consideration of the facts and circumstance of the specific case is concerning to the Court.

More concerning to the Court than the "always" use of evergreen retainers by Applicants are the actual Evergreen Provisions in this case, referred to by the Applicants as "periodic retainers." The Applicants seek approval of retention terms which would require the debtor to "replenish the [original retainer, *i.e.*, $15,000] or supply a further retainer" in an amount to be decided in the Applicants' "sole judgement."[42] At the same time, the Applicants seek to "reserve the right to request an additional retainer" in an amount determined in their "sole judgment" to be

---

[39] *See* 11 U.S.C. § 330(a)(3)(A)–(F).
[40] *See* Paul W. Bonapfel, A Guide to the Small Business Reorganization Act of 2019 2–3 (rev. 2022), https://www.ganb.uscourts.gov/sites/default/files/sbra_guide_pwb.pdf.
[41] *See, e.g., Knudsen Corp.*, 84 B.R. at 672 (holding that evergreen retainers are only appropriate in the, *inter alia*, rare, unusually large case with an exceptional amount of fees accruing each month).
[42] Amended Application at p. 1.

16

necessary and appropriate.[43] As written, and if approved by this Court, such approval would essentially authorize the Applicants to write themselves a blank check from the Debtor's post-petition income without any Court oversight as to the amount. This language cannot be approved.

Finally, the Applicants seek to limit payments to be made from "third party funds by gift or from [the Debtor's] property" unless there is an order of the Court barring the use of cash collateral for such payment.[44] Although not clear from the language of the Retention Agreement, it appears the Applicants seek approval to get payment from the Debtor *or* a third party gift, subject to a cash collateral restriction on the Debtor's funds. There are a number of problems with this provision including, but not limited to, the attempt to commit a non-contractual party to make payments without any obligation to do so or without approval or disclosure thereof. Even if all the other factors weighed in favor of approving an evergreen retainer in this case, the Court would not approve the Evergreen Provisions of the Retention Agreement. Therefore, the Court finds that this factor weighs against approval, and furthermore, finds that even if the Applicants had met all other requirements, the language of the Evergreen Provisions is not consistent with the Bankruptcy Code and is unconfirmable on its face.

Therefore, the Court finds that the Applicants have failed to (i) meet their notice and disclosure provisions with respect to the requested approval of the Evergreen Provisions and (ii) all the other four factors weigh against approval of the Evergreen Provisions. Furthermore, as stated in section B.v. above, even if all other factors were in support of the Applicants' request, the open-ended and unilateral discretion nature of the language of the Evergreen Provisions render them facially inappropriate.

---

[43] *Id.*
[44] *Id.*

## IV. Conclusion

Therefore, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1) The Applicants represent or hold no interest adverse the Debtor, are disinterested, and meet the requirements for employment as counsel to the Debtor under § 327(a) effective as of December 22, 2023.

2) The Applicants shall be compensated in accordance with the procedures set forth in §§ 330 and 331, the applicable Federal Rules of Bankruptcy Procedure, and this Court's Local Bankruptcy Rules and subject to further order of this Court.

3) The request for approval of the Evergreen Provisions as reasonable under § 328(a) is **DENIED**.

4) Within 7 days of this Order becoming a final order, the Applicants shall turnover to the chapter 7 trustee the amount of $100,163.46 representing all post-petition "evergreen" deposits after the initial "donative" $15,000.00 retainer.

[Signed and dated above.]

Copies to: recipients of electronic notifications.