John D. Burns, Esquire
The Burns Law Firm, LLC (MD 22777)
6305 Ivy Lane – Suite 340
Greenbelt, Maryland 20770
(301) 441-8780
info@burnsbankruptcyfirm.com
*Chapter 11 Counsel to Raocore Technology, LLC*
*And Counsel to the Firm*

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **In re:** | * | |
| **RAOCORE TECHNOLOGY, LLC** | * | Case No. 24-00065 (ELG) |
| | * | Chapter 7, Converted |
| Debtor | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### OBJECTION TO FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO THE LAW FIRM OF FOX ROTHSCHILD LLP, AS COUNSEL TO THE FORMER SUBCHAPTER V TRUSTEE AND TRUSTEE-IN-POSSESSION, JOLENE E. WEE BY THE BURNS LAW FIRM, LLC, ADMINISTRATIVE APPLICANT

THE BURNS LAWFIRM, LLC, (the "Firm"), by and through undersigned counsel, John D. Burns, Esquire and The Burns LawFirm, LLC, hereby files this Objection to Final Application For Allowance and Payment of Compensation and Reimbursement of Expenses to the Law Firm of Fox Rothschild, LLP, as Counsel to the Former Subchapter V Trustee And Trustee-In-Possession, Jolene E. Wee By The Burns LawFirm, LLC, Administrative Applicant (the "Objection"), and states as follows:

### FACTUAL STATEMENT:

On or about December 20, 2023 (the "Petition Date"), Raocore Technology, LLC (the "Debtor") filed a *pro se* voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") in the Bankruptcy Court for the Eastern District of

Virginia ("EDVA"). On March 1, 2024, venue was transferred to the Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"). On November 15, 2024 (the "Conversion Date"), the Bankruptcy Court converted this case to a proceeding under Chapter 7 of the Bankruptcy Code[1]. Marc Albert was appointed as the Chapter 7 Trustee ("Trustee Albert").

On April 16, 2024 (the "Appointment Date"), Jolene Wee ("Trustee Wee") was appointed as the Debtor in Possession[2] by the Bankruptcy Court pursuant to a Consent Order.

On April 16, 2024, Fox Rothschild, LLP ("Applicant") filed an Application to Employ (the "Employment Application") itself detailing three (3) attorneys; namely, Robert F. Elgidely ("Elgidely"), Diana F. Shutzer ("Shutzer") and Jacho Lee ("Lee") who bore hourly rates of $420.00 to $620.00 per hour. The Employment Application sought approval effective as of April 1, 2024. The Employment Application by Declaration advised that the Applicant is a "national firm with offices in Washington D.C."

The Employment Application at ¶ 15 relayed that the Trustee had selected the Applicant because "its partners, counsel and associates have considerable experience in the fields of construction law, governmental contracts, complex commercial bankruptcy proceedings, bankruptcy litigation, avoidance litigation, insolvency, reorganizations, liquidations and debtors' and creditors' rights." The Employment Application further advised at ¶ 20 without detail that services would be rendered "less a fifteen percent discount." The Declaration by Elgidely discloses that White Oak Commercial Finance is a prior client of the Applicant and Sunbelt Rentals is a current client of the Applicant, but that such representation would not constitute a conflict or impair the disinterestedness of the Applicant in his opinion.

---

[1] There were many interceding events of litigation and Orders and events in the bankruptcy case; however, these are not detailed herein as they would be excessive to describe and the Bankruptcy Court is aware of its own docket and its content.

The Employment Application specified at ¶ 17 that the Applicant's role was to:

(a) to attend meetings and negotiate with creditors and other parties-in-interest and advise and consult on the conduct of the case to the extent requested by the Trustee;

(b) to advise and assist the Trustee in the performance of her duties under the Bankruptcy Code, including to investigate the acts, conduct, assets, liabilities and financial condition of the pre-petition Debtor and to locate and repatriate assets of the estate;

(c) to appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtor's estate before such courts and the U.S. Trustee;

(d) to assist, advise and represent the Trustee in the investigation, formulation, filing, prosecution, negotiation and/or settlement of any and all litigation claims and causes of action available to the Debtor's estate, including, without limitation, avoidance actions under sections 542 through 550 of the Bankruptcy Code; and

(e) to assist, advise and represent the Trustee in any other matter as directed by the Trustee.

The Employment Application was approved by the Bankruptcy Court on May 8, 2024 by interlocutory Order on the engagement, with the endorsement of the United States Trustee and Trustee Wee, effective as to approval as of April 1, 2024.

The Applicant then represented Trustee Wee in the course of proceedings in the case herein through and including prosecution of a Motion to Convert this case to Chapter 7 (the "Conversion Motion") filed by Applicant on July 30, 2024, which was tried over the course of several days ending on November 5, 2024. The case was converted by an Order of this Bankruptcy Court to Chapter 7 as noted above on November 15, 2024.

---

[2] The Debtor In Possession appointment occurred under 11 U.S.C. § 1185(a) without cause and by detailed agreement, and the Order uses the term "Trustee in Possession".

The Applicant has filed the present Final Application For Allowance and Payment of Compensation and Reimbursement of Expenses to the Law Firm of Fox Rothschild, LLP, as Counsel to the Former Subchapter V Trustee And Trustee-In-Possession, Jolene E. Wee (the "Application") on February 11, 2024. Therein, it seeks the allowance of $202,976.50 in compensation and $4,508.07 in expenses for the period of April 1, 2024 through January 31, 2025 (the "Application Period").

The Firm objects to the Application herein.

### **OBJECTION:**

The Firm is a competing pre-conversion administrative expense claimant with an interim application for compensation pending for hearing and approval.

*LACK OF SUPPORTING EFFORT FOR REORGANIZATION EFFORTS*:

Missing from the Applicant's list of tasks to be provided at ¶ 17 of the Employment Application, and from the services actually provided in this case was the role of aiding in the formation and advancement of an effort to "facilitate the development of a consensual Plan of reorganization" pursuant to 11 U.S.C. § 1183(b)(7). The Debtor filed an Amended Plan of Reorganization on September 10, 2024, following a timely initial plan on March 19, 2024.

"The subchapter V trustee's special duty to facilitate the development of a consensual plan of reorganization' appears nowhere else in the Bankruptcy Code and is specific to subchapter V." *In re: The Turkey Leg Hut & Company (Singh v. Price)* Case No. 24-31275; Adv. No. 24-3114 p. 5 (Bankr. S.D. Tex. May 31, 2024)[3] However, the only apparent time dedicated by Applicant to facilitating a plan of reorganization or any efforts on that task was 2.0 hours as reflected by p.6 of the Application.

The evidentiary hearings on the Conversion Motion particularly on November 4-5, 2024 reflected that there was much acrimony between Trustee Wee and the Debtor – particularly its principals Mssrs. Odom and Johnson – who were running the enterprise. However, at no time was there any evidence that the Applicant (or Trustee Wee for that matter) was taking material steps to facilitate a reorganization with the Debtor. The Application appears to confirm this absence of effort. SubChapter V is not a modality designed to be a litigation platform for on-going offensive civil combat and asset recoveries by SubChapter V Trustees and their counsel: It is designed to "streamline the bankruptcy process by which small businesses debtors reorganize and rehabilitate their financial affairs." H. Rpt. 116-171 (Small Business Reorganization Act of 2019) (07/23/2019).

The Debtor was a minority small business entity with the prospect contracts based on Mr. Odom's status as 100% disabled veteran. The efforts of Applicant at large scale litigation against the Debtor were admirable in their sophistication and scope, and would be commendable if this were a mega-Chapter 11 case worthy of such offensive capabilities. However, this was a modest sized contracting firm with a collection of family or close acquaintance employees who engaged in contracting services for public works including water, some fiber optics and electrical works.

"***STACKING*** *OF COUNSEL AND COST/BENEFIT*":

Although Trustee Wee was frequently absent from personal appearances in this Chapter 11 case (but found time for zoom appearances), the Applicant often appeared particularly in person in the months prior to final trial with three (3) counsel; namely, Elgidely, Shutzer and Lee, who appear to be billing at a collective $1,640.00 per hour when appearing.

---

[3] The cited case was ultimately converted to Chapter 7 for gross mismanagement inter alia. *See*, *In re The Turkey Leg Hut & Company LLC*, No. 24-31275, 2024 WL 4338523 (Bankr. S.D. Tex. Sept. 27, 2024)  However, this does

Although some adjustment was made by the testimony of Trustee Wee on or about November 4-5, 2024 in the Conversion Motion trial to the as of then not received invoice so that the figure was much lower than the sums sought herein by recollection of the undersigned, this was not evident in the Application where there is a 211.1 hours for Elgidely, 102.9 hours for Lee (who to the recollection of the undersigned never even spoke or made any presentation in the Court), and 34.7 hours for Shutzer.  It is unclear why all these attorneys (with an additional attorney Higgins at a small entry) were required in a modestly sized Sub Chapter V case and in particular with six (6) paralegals albeit with relatively modest charges who did not perform comparatively balanced services in time effort.

Notably, this is all on top of Trustee Wee who has her own charges by separate fee application.  Moreover, a chart which allocates from 365.30 hours total into "282.90" assigned to "Case Administration" whatever Applicant may mean from that designation, and "44.20" to "Other Contested Matters," whatever that may mean, against the remainder of 38.20 hours to other categories is not a meaningful guide to whatever Applicant actually did in this case. It should be noted that "16.90" is assigned to "Assumption/Rejection of Leases and Contracts" where Sunbelt Rental's Administrative Claim arose to $321,453.52 was not a substantial effort in time dedication in review of that important matter.

Candidly, there was nothing unique herein by this small business disadvantaged veteran contracting case that required some specialization worthy of a mega-Chapter 11 in qualifications of "construction law, governmental contracts, complex commercial bankruptcy proceedings, bankruptcy litigation, avoidance litigation, insolvency, reorganizations, liquidations and debtors' and creditors' rights."  This is particularly so when the obvious fact that Trustee Wee had no authorization or statutory power to engage counsel in "avoidance litigation" or

---

not diminish the necessary role of a SubChapter V Trustee and facilitating reorganization efforts.

"liquidations" with turnover and the like. *See, eg*; collection of assets pursuant to 11 U.S.C. § 704(a)(1) as reserved to Debtor by 11 U.S.C. § 1183(b)(1), (5)(A), There was also no need for significant experience in "governmental contracts" or "complex bankruptcy proceedings" at least on a commercial expertise level here. This was a straight up litigation case.

To that end, this was a modest sized case with a very aggressive alleged creditor, White Oak Commercial Finance, who was litigating against the Debtor hard, fast and furious for a period of almost a year in bankruptcy court. The evidence at various stages of the case repeatedly demonstrated that the Consent Order entered on Appointment Date was arrived at by the Debtor to cease endless litigation, circular investigations and pointless disputes from creditors in another Chapter 11 case. However, all that ensued from the employment of Applicant was more litigation that did not facilitate any consent resolution of the litigation disputes Trustee Wee was appointed to bring to an end. That is unfortunate.

The testimony over the course of the Conversion Motion demonstrated that Mr. Odom very much disputed the calculus that was used to arrive at what was ultimately an unopposed administrative expense claim of $321,453.52 by Sunbelt Rentals (just two weeks prior to the Conversion Motion), and Applicant of course currently represents Sunbelt Rentals as disclosed. The testimony over the course of the Conversion Motion also quizzically established that Trustee Wee was looking to move along on a plan that did not involve use of White Oak Commercial Finance's alleged assets, which of course was not a plan in prospect for her initiative at all given the claims by White Oak Commercial Finance that it had rights in the several contracts which Debtor claimed as it own. Again, Applicant discloses that White Oak Commercial Finance was a prior client, and it is unclear how a large national litigation firm with such affiliations came

to be hired by Trustee Wee in the first instance in this modest sized SubChapter V case where White Oak Commercial Finance was such an active adverse party.

The Firm is mindful of the Court's comments made at the Rule 2004(b) hearings anew from White Oak Commercial Finance in authorizing same over Debtor's objections but with tepid resistance from Applicant on behalf of Trustee Wee that bankruptcy involves investigations with responsibilities as well as the opportunity rights that a debtor has for rehabilitation. However, when Applicant turns a short opportunity for productive reorganization by facilitating a plan with the Debtor into a circular firing squad consumed by a never ending investigatory role of ongoing litigation preparatory efforts, that rehabilitative opportunity becomes purely theoretical because it never arrives. That ongoing litigation and investigatory effort for months on end, respectfully, is not what Sub Chapter V is all about.

*ENGAGEMENT PARTICULARS*:

The Applicant may have an effective date of its Employment Application of April 1, 2024 by interlocutory Order; however, *nunc pro tunc* engagement is no more[4]. The effective date of Trustee Wee's appointment as Debtor in Possession transpired on April 16, 2024, the Appointment Date. Similarly, the effective date of the Conversion Order was November 15, 2024, which ended Trustee Wee's appointment as Debtor in Possession and commenced the appointment of Trustee Albert in Chapter 7. It does not appear that the Applicant may charge for time outside the scope of Trustee Wee's appointment as Debtor in Possession, as it would present overlap with competing entities who have full trustee powers on each end of the equation.

---

[4] The Supreme Court of the United States has ruled that lower courts are prohibited from entering *nunc pro tunc* employment orders. *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S.Ct. 696, 701 (2020). "'Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court.'" *Id.* (citing *Cuebas y Arredonda v. Cuebas y Arredondo*, 223 U.S. 377 (1912).

The fifteen (15%) percent write down noted in ¶ 20 of the Employment Application does not appear to the read of the Firm in the Application and there are no comparative rates from which the discount may be divined again to the read of the undersigned in the Application.

The Application also requests in its *ad damnum* clause and otherwise that the sum in the Application not only be awarded, but *to be paid* by Trustee Albert. Putting aside that the Employment Application speaks of payment to Applicant only by Trustee Wee, the Application and this Applicant hold a pre-conversion administrative expense claim. Such expense if awarded in whole or in part will be paid by Trustee Albert *pro rata* with any other allowed pre-conversion administrative expenses given the lack of retainer rights by Applicant. Thus, the relief requested cannot be awarded to Applicant.

## **LEGAL BASIS FOR OBJECTION**:

The Applicant must demonstrate that pursuant to 11 U.S.C. § 503(b)(1)(A), (B) that it is seeking "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person"; and "reimbursement for actual, necessary expenses."

Section 503(b)(3) provides that "in determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including— **(A)** the time spent on such services; **(B)** the rates charged for such services; **(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; **(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; **(E)** with respect to a

professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and **(F)** whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

Section 503(b)(4)(A) proscribes in Chapter 11: **(i)** unnecessary duplication of services; or **(ii)** services that were not— **(I)** reasonably likely to benefit the debtor's estate; or **(II)** necessary to the administration of the case.

Although arising in our neighboring jurisdiction, Maryland, the ten "cardinal rules" with which fee applications should comply should be adopted herein. *See, In Re Bernard Hill,* 133 B.R. 61 (Bankr. D. Md. 1991). Those factors are:

(i) *Fee applications must make sense*;

(ii) Fee applications must indicate what work was performed, when it was performed, and how much money is being charged for performing it.

(iii) *Services rendered should be reported in several broad, general categories*;

(iv) Fee applications must contain a "lodestar" analysis;

(v) *Fee applications must indicate how much in time and money was "written off" in the exercise of "billing judgment"*;

(vi) Numbers must add up;

(vii) The names of the individuals who rendered services, together with their hourly rates and years of experience must be disclosed;

(viii) Time records must be submitted with the fee application;

(ix) Out of pocket expenses for which reimbursement is sought must be set forth in the application; and

(x) *When more than one professional or a firm of professionals is appointed to represent or furnish similar services to a Debtor, the fee application must indicate a clear division of labor and non-duplicative effort.*

*Id*. at 62-63 (emphasis supplied).

Here, an Application which simply discloses a few generalized charts that are unhelpful on assigned large chunks of time to "Case Administration" or "Other Contested Matters" is not compliant with these principles of simple and straightforward disclosure.  Likewise, an exercise of write-offs and "billing judgment" in those write-offs should be plainly communicated if the write-offs occurred.  As Trustee Wee was also engaged and has submitted her own fee application, overlap and a clear division of labor to avoid duplication should have been disclosed, and has not been.  The Application as such and for the other reasons presented herein does not "make sense" within the plain requirements of *Bernard Hill*.

The Firm contends that the Applicant has not demonstrated that the overall time spent on such services in light of the nearly non-existent focus on facilitating a consensual plan of reorganization with the Debtor in comparison to hundreds of hours spent on what appears to be undesignated services seemingly focused on litigation investigation for turnover actions and avoidance actions that Trustee Wee was not even empowered to bring was unhelpful to the administration of or beneficial at the time at which the service was rendered toward the successful completion of a case under Chapter 11 herein.  Stacking counsel at $1,640.00 per hour collectively on Court hearings and multiple tasks was not reasonable compensation herein as sought.

Engagement of a "national law firm" in a Sub Chapter V case which engaged in litigation services essentially and no serious commitment to reorganization or facilitating same may have been the business judgment right of Trustee Wee, regardless how the Applicant came to be employed with adverse parties represented by it herein.  And, the Firm in this Objection recognizes a portion of the Application will be granted as Trustee Wee has the right to seek reasonable services within the ambit of her statutory engagement as Debtor in Possession during

that brief tenure. However, the Application as filed should be granted pending further amendments consistent with this Objection and for write-downs consistent herewith.

The Firm reserves the right to further respond to the Application. Nothing herein shall be construed to: (a) constitute an admission; (b) constitute a waiver of any of Firm's rights; or (c) prejudice Firm's rights at law, equity or otherwise. Firm expressly reserves all of its rights and shall argue on all authorities at the hearing on the Application.

WHEREFORE, the Firm respectfully requests that the Application be DENIED and that such other and further relief as equity and justice may require be granted to the Firm.

Dated: March 4, 2025

                                                  Respectfully submitted,
                                                  /s/ John D. Burns (MD 22777)

                                                  John D. Burns, Esquire
                                                  The Burns Law Firm, LLC
                                                  6305 Ivy Lane, Suite 340
                                                  Greenbelt, MD 20770
                                                  Tel: 301-441-8780
                                                  Info@burnsbankruptcyfirm.com
                                                  *Attorneys for the Firm*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 4th day of March, 2025, a copy of this Objection was served upon the parties identified below:

**By CM/ECF**
lkatz@hirschlerlaw.com
Lawrence A. Katz, Esquire, Chapter 11 Trustee
JJB DC, Inc. (separate company)

Vincent J. Roldan vroldan@mblawfirm.com
Counsel to White Oak, finance entity to separate company

william@johnsonlg.law
William Johnson, counsel to Raymond Odom

Jeremy Friedberg jeremy@friedberg.legal
Local counsel to White Oak, finance entity to separate company

Jolene Wee jwee@jw-infinity.com
Subchapter V Trustee

Eustis, Kristen S. (USTP) Kristen.S.Eustis@usdoj.gov\
Office of the United States Trustee

Elgidely, Robert F. RElgidely@foxrothschild.com
Counsel to Subchapter V Trustee

Jones, Brad D. brad.jones@stinson.com
Counsel to Chapter 7 Trustee

Albert, Marc marc.albert@stinson.com
Chapter 7 Trustee

**VIA EMAIL:**
Debtor by Ray Odom

/s/ John D. Burns
John D. Burns