John D. Burns, Esquire
The Burns Law Firm, LLC (MD 22777)
6305 Ivy Lane – Suite 340
Greenbelt, Maryland 20770
(301) 441-8780
info@burnsbankruptcyfirm.com
*Chapter 11 Counsel to Raocore Technology, LLC*
*And Counsel to the Firm*

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **In re:** | * | |
| **RAOCORE TECHNOLOGY, LLC** | | Case No. 24-00065 (ELG) |
| | * | **Chapter 7, Converted** |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**OBJECTION TO FIRST AND FINAL APPLICATION OF JOLENE E. WEE AS SUBCHAPTER V TRUSTEE FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD FROM DECEMBER 20, 2023 THROUGH FEBRUARY 13, 2025 FILED BY THE BURNS LAWFIRM, LLC, ADMINISTRATIVE APPLICANT**

THE BURNS LAWFIRM, LLC, (the "Firm"), by and through undersigned counsel, John D. Burns, Esquire and The Burns LawFirm, LLC, hereby files this Objection to First and Final Application of Jolene E. Wee As SubChapter V Trustee For Compensation And Reimbursement Of Expenses Incurred During the Period From December 20, 2023 Through February 13, 2025 Filed By The Burns LawFirm LLC, Administrative Applicant (the "Objection"), and states as follows:

### FACTUAL STATEMENT:

On or about December 20, 2023 (the "Petition Date"), Raocore Technology, LLC (the "Debtor") filed a *pro se* voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") in the Bankruptcy Court for the Eastern District of

Virginia ("EDVA").  On March 1, 2024, venue was transferred to the Bankruptcy Court for the District of Columbia (the "Bankruptcy Court").  On November 15, 2024 (the "Conversion Date"), the Bankruptcy Court converted this case to a proceeding under Chapter 7 of the Bankruptcy Code[1].  Marc Albert was appointed as the Chapter 7 Trustee ("Trustee Albert").

Trustee Wee was appointed as the SubChapter V Trustee on or about the Petition Date.  On April 16, 2024 (the "Appointment Date"), Jolene Wee ("Trustee Wee") was further appointed as the Debtor in Possession[2] by the Bankruptcy Court pursuant to a Consent Order.

On April 16, 2024, Fox Rothschild, LLP ("FR") filed an Application to Employ by engagement from Trustee Wee.

FR then represented Trustee Wee in the course of proceedings in the case herein through and including prosecution of a Motion to Convert this case to Chapter 7 (the "Conversion Motion") filed by Applicant on July 30, 2024, which was tried over the course of several days ending on November 5, 2024.  The case was converted by an Order of this Bankruptcy Court to Chapter 7 as noted above on November 15, 2024.  FR filed its Final Fee Application herein in which it claims substantial sums for representation of Trustee Wee in this erstwhile SubChapter V case.

Trustee Wee filed an First and Final Application of Jolene E. Wee As SubChapter V Trustee For Compensation And Reimbursement Of Expenses Incurred During the Period From December 20, 2023 Through February 13, 2025 (the "Wee Application").  Therein, Trustee Wee seeks $103,421.76 from the period of December 20, 2023 to February 13, 2025 (the "Application

---

[1] There were many interceding events of litigation and Orders and events in the bankruptcy case; however, these are not detailed herein as they would be excessive to describe and the Bankruptcy Court is aware of its own docket and its content.
[2] The Debtor In Possession appointment occurred under 11 U.S.C. § 1185(a) without cause and by detailed agreement, and the Order uses the term "Trustee in Possession".

Period"). Trustee Wee bills between $595.00 and $615.00 per hour, other than for travel time which is at 50% discount.

Therein, Trustee Wee details that she spent 117.8 hours and $72,407.00 on "General Subchapter V Trustee Duties" and 23.8 hours and $14,637.00 on "Business Operations," The remainder 19.1 hours or $5,837.25 on "Travel" and the remainder is a blend of 11.7 hours and $7,147.50 on "Case Administration"; and 4.2 hours and $2,583.00 on "Fee Application Preparation." Expenses are $810.01, which include $715.62 on "Hotels." Application at ¶ IIB.

The Application relays at ¶ IIA that "Trustee [Wee] performed her duties as required of her as the Subchapter V trustee-in possession, which generally included administering the case, managing the debtor's operations and assets, and communicating with parties. The Trustee started her duties on December 20, 2023 upon her appointment by the U.S. Trustee. During the Billing Period, the Trustee has appeared at numerous evidentiary hearings, meetings and conferences with the debtor, creditors, equity and other professionals."

The prayer for relief asks for the ability of Trustee Wee to draw on the retainers in her escrow which is appropriate; however, the form of Order supplied requests that Trustee Albert be required to pay her administrative expense, rather than it be an allowed pre-conversion administrative expense.

The Firm objects to the Application herein.

**OBJECTION:**

The Firm is a competing pre-conversion administrative expense claimant with an interim application for compensation pending for hearing and approval.

To begin with, no one including the Firm debates that Trustee Wee is an commendable and experienced bankruptcy professional with almost 20 years bankruptcy experience and a keen handle on mathematics and programming skills, and how to calculate financial returns, which skills most lawyers do not possess. Her accolades are notable and her credentials extensive. "Her case experience included companies in various industries such as automotive, banking, e-commerce, financial services, healthcare, insurance, manufacturing, professional services, real estate, retail, and technology industries with revenues of up to $15 billion" as she relays in her Application. Likewise, Trustee Wee has admirably "served as a financial advisor, valuation advisor, or forensic/fraud advisor in more than thirty (30) Chapter 11, restructuring, insolvency, and litigation matters to date" as her Application further relays. She is a qualified complex financial professional who is deserved for the largest and most complicated case endeavors, and she is quite busy as her Application and this case demonstrate.

This case, however, was not some large or mega Chapter 11 case with such complications of a $15 billion dollar enterprise. This was not a complex multilevel reverse *Ponzi* scheme, or some other money laundering fraud endeavor, with a *cornucopia* of ever emerging litigation parties who needed almost a year to conduct serial investigations over and over again only to arrive at the conclusion of that time with absolutely nothing to show for it all. Although Trustee Wee had infrequent time occasions to dedicate personal appearance at hearings and was often otherwise pulled by her very busy engagement calendar, it is unclear what time she really had to focus on this Debtor's rehabilitation efforts in a modest sized small business endeavor.

The Debtor was a spin-off minority small business entity with the prospect contracts based on Mr. Odom's status as 100% disabled veteran. It had a number of family and close insider employees, who worked hard and were trying throughout the case pendency to satisfy

the contracts and produce what they could in the face of never ending litigation which needed to be zealously defended.  The Debtor needed assistance in pushing back that ever emerging litigation, not a SubChapter V Trustee who encouraged it and actually hired a "national law firm" who only sought more litigation and investigatory roles after April 16, 2024. The Debtor serviced contracting services for public works including water, some fiber optics and electrical works and it operated without insolvency on its Petition Date according to the testimony of Mr. Odom, its managing member.  Things did not end that way as litigation spawned out of any control against the Debtor.

### AIDING THE DEBTOR IN FORMULATING A CONSENSUAL PLAN:

Missing from Trustee Wee's list of tasks provided at ¶ IIB of the Application, and from the services actually provided in this case was the role of aiding in the formation and advancement of an effort to "facilitate the development of a consensual Plan of reorganization" pursuant to 11 U.S.C. § 1183(b)(7).  The Debtor filed an Amended Plan of Reorganization on September 10, 2024, following a timely initial plan on March 19, 2024.  Trustee Wee only criticized the Debtor's efforts and no visible evidence exists to demonstrate that she actively aided the Debtor's rehabilitation efforts as her primary role.  Indeed, the list of activities at ¶ IIB shows no category for Chapter 11 Plan development.

"The subchapter V trustee's special duty to facilitate the development of a consensual plan of reorganization' appears nowhere else in the Bankruptcy Code and is specific to subchapter V." *In re: The Turkey Leg Hut & Company (Singh v. Price)* Case No. 24-31275; Adv. No. 24-3114 p. 5 (Bankr. S.D. Tex. May 31, 2024)[3]  A small portion of testimony from the Conversion Motion testimony exists to support Trustee Wee's tepid efforts to help facilitate and work with the Debtor's team on the Plan when she discussed with White Oak their requirements

that it not impinge on what they believed to be their contracts, which contracts the Debtor testified were property of this bankruptcy estate and serviced by the hard work of the Debtor's personnel.

The testimony of the Debtor's witnesses which was really not rebutted by Trustee Wee was that she was just not available in the case, at least in the portion when she was Debtor in Possession and needed to aid and replace the Debtor's personnel in the reorganization push to a consensual Plan of Reorganization. Trustee Wee should be required to supplement her Application to aid parties in determining what portion of her five (5) categories was the dedicated time to the "special duty" she had to aid in the development of a plan of reorganization. SubChapter V is not a modality designed to be a litigation platform for on-going offensive civil combat and asset recoveries by SubChapter V Trustees and their counsel: It is designed to "streamline the bankruptcy process by which small businesses debtors reorganize and rehabilitate their financial affairs." H. Rpt. 116-171 (Small Business Reorganization Act of 2019) (07/23/2019). Small Business cases die on the vine without SubChapter V assistance in the development of such a reorganization Plan. The Application should explain in great detail what she did that the record herein does not reflect in that regard, if it was done.

### *DIVISION OF DUTIES TO AVOID OVERLAP OR DUPLICATION OF EFFORT*:

This Application follows one from Trustee Wee's national law firm FR for compensation, which presents substantial personnel to this litigation case which may or may contain overlapping time and effort with Trustee Wee. For the reasons below from *Bernard Hill*, *infra*, the present Application should detail what efforts were made to avoid such duplication by multiple professionals and how Trustee Wee segregated her time and efforts from that of FR.

### *COST/BENEFIT AND RESULTS*:

---

[3] The cited case was ultimately converted to Chapter 7 for gross mismanagement inter alia. *See*, *In re The Turkey Leg Hut & Company LLC*, No. 24-31275, 2024 WL 4338523 (Bankr. S.D. Tex. Sept. 27, 2024) However, this does

Although Trustee Wee was frequently absent from personal appearances in this Chapter 11 case (but found time for zoom appearances), there is little described detail in her Application over the 117.8 hours and $72,407.00 on "General Subchapter V Trustee Duties" and in particular on the "Business Operations" of 23.8 hours and $14,637.00 dedicated to this case.

The Debtor testified during the Conversion Motion that Trustee Wee was not generally available and frankly the shut down of operations occurred according to Mr. Odom and Mr. Johnson because she could not coordinate business operations including on insurance payments among other causes emanating from Trustee Wee.  What did Trustee Wee achieve in this SubChapter V other than a sprawling offensive litigation endeavor that led to nothing conclusive, other than a determined goal of converting the case to Chapter 7 so she could move on from the matter?

Simply dedicating the time to the case is one thing, but focusing on achieving a goal or producing some result from all the investigation efforts that she claimed she was engaging in would be important to disclose in the Application.  It is also unclear why a local resident Maryland SubChapter V Trustee would need thousands of dollars in travel time and hundreds of dollars in hotel costs.  This does not seem reasonable or to be commensurate with the time needs dedicated by a local SubChapter V Trustee to this regional small business case.

Candidly, there was nothing unique herein by this small business disadvantaged veteran contracting case other than litigation defense that required some specialized investigation for month after month without any results of such an investigation by report or otherwise being known, besides relaying acrimony with the Debtors' principals who wanted to reorganize the business. This is particularly so given the obvious fact that Trustee Wee had no authorization or statutory power to engage in "avoidance litigation" or  "liquidations" with turnover and the like.

---

not diminish the necessary role of a SubChapter V Trustee and facilitating reorganization efforts.

*See, eg*; collection of assets pursuant to 11 U.S.C. § 704(a)(1) as reserved to Debtor by 11 U.S.C. § 1183(b)(1), (5)(A),

To that end, this was a modest sized case with a very aggressive alleged creditor, White Oak Commercial Finance, who was litigating against the Debtor hard, fast and furious for a period of almost a year in bankruptcy court. The evidence at various stages of the case repeatedly demonstrated that the Consent Order entered on the Appointment Date was arrived at by the Debtor to cease endless litigation, circular investigations and pointless disputes from creditors in another Chapter 11 case and to pursue reorganization. However, all that ensued from the employment of Trustee Wee was more litigation that did not facilitate any consent resolution of the litigation disputes Trustee Wee was appointed to bring to an end. That is unfortunate.

The testimony over the course of the Conversion Motion demonstrated that Mr. Odom very much disputed the calculus that was used to arrive at what was ultimately an unopposed administrative expense claim of $321,453.52 by Sunbelt Rentals (just two weeks prior to the Conversion Motion), and it is unclear what if any efforts in what category of reported services did Trustee Wee attempt to resolve that matter to avoid such a large administrative expense claim arriving, which undoubtedly did not aid in the rehabilitative effort in this SubChapter V case.

The Firm is mindful of the Court's comments made at the Rule 2004(b) hearings anew from White Oak Commercial Finance in authorizing same over Debtor's objections with responsibilities as well as the opportunity rights that a debtor has for rehabilitation. However, when Trustee Wee turns a short opportunity for aiding in productive reorganization by facilitating a plan with the Debtor into a circular firing squad consumed by a never ending investigatory role of ongoing litigation preparatory efforts, that rehabilitative opportunity becomes purely theoretical

because it never arrives. That ongoing litigation and investigatory effort for months on end, respectfully, is not what Sub Chapter V is all about.

### *WRITE DOWNS*:

It is unclear what if any write downs or adjustments Trustee Wee has afforded in her Application, pursuant to the particulars of *Bernard Hill, infra* describes. This would be helpful to know.

### *ENGAGEMENT PARTICULARS*:

Trustee Wee has requested her Application Period through February 13, 2025; however, her appointed role as Trustee ended on November 15, 2024 when the Conversion Motion was granted and Trustee Albert was appointed as Chapter 7 Trustee. There cannot be two such trustees during the same period, and the Application cannot seek compensation past November 15, 2024, and should be adjusted.

As noted above, the Order accompanying the Application also requests that her administrative expenses not only be awarded, but *to be paid* by Trustee Albert. Such expense if awarded in whole or in part will be paid by Trustee Albert *pro rata* with any other allowed pre-conversion administrative expenses, other than Trustee Wee's right to apply her retainers which she rightfully requests. Thus, the relief requested cannot be awarded to Applicant as set forth in the Application.

### **LEGAL BASIS FOR OBJECTION**:

The Applicant must demonstrate that pursuant to 11 U.S.C. § 503(b)(1)(A), (B) that it is seeking "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person"; and "reimbursement for actual, necessary expenses."

Section 503(b)(3) provides that "in determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including— **(A)** the time spent on such services; **(B)** the rates charged for such services; **(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; **(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; **(E)** with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and **(F)** whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

Section 503(b)(4)(A) proscribes in Chapter 11: **(i)** unnecessary duplication of services; or **(ii)** services that were not— **(I)** reasonably likely to benefit the debtor's estate; or **(II)** necessary to the administration of the case.

Although arising in our neighboring jurisdiction, Maryland, the ten "cardinal rules" with which fee applications should comply should be adopted herein. *See, In Re Bernard Hill,* 133 B.R. 61 (Bankr. D. Md. 1991). Those factors are:

(i) *Fee applications must make sense*;

(ii) Fee applications must indicate what work was performed, when it was performed, and how much money is being charged for performing it.

(iii) *Services rendered should be reported in several broad, general categories*;

(iv) Fee applications must contain a "lodestar" analysis;

 (v) *Fee applications must indicate how much in time and money was "written off" in the exercise of "billing judgment";*

 (vi) Numbers must add up;

 (vii) The names of the individuals who rendered services, together with their hourly rates and years of experience must be disclosed;

 (viii) Time records must be submitted with the fee application;

 (ix) Out of pocket expenses for which reimbursement is sought must be set forth in the application; and

 (x) *When more than one professional or a firm of professionals is appointed to represent or furnish similar services to a Debtor, the fee application must indicate a clear division of labor and non-duplicative effort.*

*Id*. at 62-63 (emphasis supplied).

 Here, an Application which simply discloses a few generalized charts that are unhelpful on assigned large chunks of time to "General Subchapter V Trustee Duties" or "Business Operations" without some greater detailed explanation is not compliant with these principles of simple and straightforward disclosure. Likewise, an exercise of write-offs and "billing judgment" in those write-offs should be plainly communicated if any write-offs occurred. As FR was also engaged and has submitted its own fee application, overlap and a clear division of labor to avoid duplication should have been disclosed, and has not been. The Application as such and for the other reasons presented herein does not "make sense" within the plain requirements of *Bernard Hill*.

 The Firm contends that the Applicant has not demonstrated that the overall time spent on such services in light of the nearly non-existent focus on facilitating a consensual plan of reorganization with the Debtor in comparison to many hours spent on what appears to be undesignated services seemingly focused on litigation investigation for turnover actions and avoidance actions that Trustee Wee was not even empowered to bring was unhelpful to the

administration of or beneficial at the time at which the service was rendered toward the successful completion of a case under Chapter 11 herein.

The Firm in this Objection recognizes a portion of the Application will be granted as Trustee Wee has the right to seek reasonable services within the ambit of her statutory engagement during her tenure through November 15, 2025. However, the Application as filed should be reserved pending further amendments consistent with this Objection and for write-downs consistent herewith.

The Firm reserves the right to further respond to the Application. Nothing herein shall be construed to: (a) constitute an admission; (b) constitute a waiver of any of Firm's rights; or (c) prejudice Firm's rights at law, equity or otherwise. Firm expressly reserves all of its rights and shall argue on all authorities at the hearing on the Application.

WHEREFORE, the Firm respectfully requests that the Application be DENIED and that such other and further relief as equity and justice may require be granted to the Firm.

Dated: March 6, 2025

Respectfully submitted,
/s/ John D. Burns (MD 22777)

John D. Burns, Esquire
The Burns Law Firm, LLC
6305 Ivy Lane, Suite 340
Greenbelt, MD 20770
Tel: 301-441-8780
Info@burnsbankruptcyfirm.com
*Attorneys for the Firm*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 6th day of March, 2025, a copy of this Objection was served upon the parties identified below:

**By CM/ECF**
lkatz@hirschlerlaw.com
Lawrence A. Katz, Esquire, Chapter 11 Trustee
JJB DC, Inc. (separate company)

Vincent J. Roldan vroldan@mblawfirm.com
Counsel to White Oak, finance entity to separate company

william@johnsonlg.law
William Johnson, counsel to Raymond Odom

Jeremy Friedberg jeremy@friedberg.legal
Local counsel to White Oak, finance entity to separate company

Jolene Wee jwee@jw-infinity.com
Subchapter V Trustee

Eustis, Kristen S. (USTP) Kristen.S.Eustis@usdoj.gov\
Office of the United States Trustee

Elgidely, Robert F. RElgidely@foxrothschild.com
Counsel to Subchapter V Trustee

Jones, Brad D. brad.jones@stinson.com
Counsel to Chapter 7 Trustee

Albert, Marc marc.albert@stinson.com
Chapter 7 Trustee

**VIA EMAIL:**
Debtor by Ray Odom

　　　　　　　　　　　　　　　　　　　　　　　　/s/ John D. Burns
　　　　　　　　　　　　　　　　　　　　　　　　John D. Burns